IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-cr-30038 |
| ) | |
| CHUCKIE LACY, ) | |
| ) | |
| Defendant. ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Chuckie Lacy's Amended Motion for Compassionate Release (d/e 33) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is GRANTED.

**I. BACKGROUND**

On December 29, 2015, Defendant pleaded guilty to one count of distribution of cocaine base in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(C). On May 13, 2016, the Court sentenced Defendant to 80 months' imprisonment and 3 years of supervised release. Defendant is currently serving his sentence at FCI Forrest City Low in Forrest City, Arkansas, and has a projected release date of

August 27, 2020.  While in custody at FCI Forrest City Low, Defendant was indicted in the Eastern District of Arkansas for two counts of possession of contraband in a prison.  See Indictment, Case No. 19-CR-00523 (E.D. Ark.).  Defendant initially consented to detention on the charges, reserving the right to reopen the detention hearing if circumstances change.  Order of Detention & Order to Lodge Detainer, d/e 6, Case No. 19-CR-00523 (E.D. Ark.).  As a result, a detainer has been lodged against Defendant.  Id.

According to the Presentence Investigation Report (PSR) prepared for Defendant's sentencing, Defendant was diagnosed at the age of twelve with Blount's Disease, a growth disorder of the tibia that causes the lower leg to angle inward, in both legs.  PSR ¶ 56.  Defendant underwent a series of surgeries from the ages of thirteen to fourteen to address this condition, although Defendant reported that he still experienced pain related to the condition even after the surgeries.  Id.  According to the PSR, Defendant's weight, which at the time the PSR was prepared was 420 pounds, exacerbates this condition.  Id.  Defendant also reported being diagnosed with high blood pressure, diabetes, and diabetes in 2004.  Id. at ¶ 57.

On April 20, 2020, Defendant filed a pro se motion for compassionate release (d/e 31) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On April 23, 2020, following the appointment of the Federal Public Defender's Office to represent Defendant, an Amended Motion for Compassionate Release  (d/e 33) was filed.  Defendant requests compassionate release due to his health issues and the COVID-19 pandemic.  Defendant also requests that the Court waive the exhaustion requirement found at 18 U.S.C. § 3582(c)(1)(A).  Defendant's amended motion does not indicate whether he previously made a request for compassionate release to the Warden of FCI Forrest City Low.

If released from custody, Defendant plans to reside with his mother and her partner at a residence in Springfield.  The United States Probation Office, in a Memorandum (d/e 34) addressing Defendant's request for compassionate release, did not find Defendant's release plan to be suitable.  The Probation Office's conclusion was based on Defendant's mother's criminal record and the fact that Defendant had previously reported to the Probation Office when the PSR was prepared that he did not have a good relationship with his mother's partner.

On May 1, 2020, the Court held a video conference hearing on Defendant's motion. The Court heard oral arguments from counsel and a statement made by Defendant.

As of April 30, 2020, the Bureau of Prisons (BOP) reports that FCI Forrest City Low has thirty-nine confirmed cases of COVID-19, consisting of thirty-eight inmates and one staff member. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed April 30, 2020).

The Government objects to Defendant's request, arguing that this Court lacks jurisdiction to hear Defendant's motion as Defendant has not exhausted the administrative remedies under § 3582(c)(1)(A). The Court finds that it has jurisdiction to hear Defendant's motion and the exhaustion requirement of § 3582(c)(1)(A) can be waived.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. §

3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a

reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Here, Defendant has failed to satisfy either exhaustion requirement, as he has not made a request for compassionate release to the warden of his facility. Defendant argues that the Court has the authority to waive compliance with the statutory exhaustion requirement. Def.'s Mot. for Compassionate Release 3. The Government disagrees and argues that the Court lacks jurisdiction to hear the motion as exhaustion is mandatory based on the plain language of the statute. See Resp. 4-5, d/e 35.

Below, the Court address whether it has jurisdiction to consider Defendant's motion, whether the Court can waive the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A), and whether Defendant is entitled to compassionate release.

**A.   Jurisdiction**

Federal district courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs. Inc., 545 U.S. 546, 552 (2005). Without jurisdiction, this Court cannot hear Defendant's request for compassionate release. See Henderson ex rel.

Henderson v. Shinseki, 562 U.S. 428, 434 (2011).

An important distinction exists as to whether a procedural rule is a jurisdictional requirement or a claim-processing rule. See id. ("This question is not merely semantic but one of considerable practical importance for judges and litigants."); Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 160 (2010). Therefore, "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." Henderson, 562 U.S. at 435. Claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Id.

The U.S. Supreme Court adopted a "bright-line" test for deciding when to classify a procedural rule as jurisdictional. Arbaugh v. Y & H Corp., 546 U.S. 500, 515-16 (2006). The inquiry is whether Congress has "'clearly state[d]'" that the rule is jurisdictional." Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013). "Absent such a clear statement . . . courts should treat the restriction as nonjurisdictional in character." Id.

In United States v. Taylor, the Seventh Circuit held that 18

U.S.C. § 3582(c)(2) sets forth a nonjurisdictional rule, overruling previous cases decided by the Seventh Circuit.  778 F.3d 667, 671-72 (7th Cir. 2015) ("A district court has subject-matter jurisdiction to consider a motion for relief under 18 U.S.C. § 3582(c)(2) regardless of whether the moving defendant is actually eligible for such discretionary relief.").  Section 3582(c)(2) allows the Court to reduce a term of imprisonment if the defendant was sentenced based on a sentencing range that was subsequently lowered by the United States Sentencing Commission.  18 U.S.C. § 3582(c)(2).

While Taylor did not address § 3582(c)(1)(A), Taylor's reasoning is equally applicable to that statutory subsection.  The Court finds that Congress did not "clearly state" in § 3582(c)(1)(A) that the exhaustion requirement is jurisdictional.  Therefore, the Court finds that the exhaustion requirement found in 18 U.S.C. § 3582(c)(1)(A) is a claim-processing rule, not a jurisdictional rule.  See Henderson, 562 U.S. at 435 (noting that claim-processing rules merely require "that the parties take certain procedural steps at certain specified times"); United States v. Haney, No. 19-cr-541, 2020 WL 1821988, at *2 (S.D.N.Y. Apr. 13, 2020) ("[T]he exhaustion requirement in § 3582(c)(1)(A) merely controls who -- the BOP or defendant -- may

move for compassionate release and when such a motion may be made.").

## B. Waiver of the Exhaustion Requirement

Although the Court has jurisdiction to hear Defendant's motion, Defendant has not met the exhaustion requirement set forth in § 3582(c)(1)(A).  The Court must determine whether it has the authority to waive the thirty-day period of the exhaustion requirement.  The Government argues that only it has the power to waive the thirty-day requirement, not the Court.

In the short time the COVID-19 pandemic has wreaked havoc on this country, many federal judges have considered this issue.  Some judges have found that they have the discretion to waive the thirty-day requirement in light of the serious risks associated with COVID-19.  See, e.g., United States v. Scparta, No. 18-cr-578, 2020 WL 1910481 (S.D.N.Y. Apr. 19, 2020); United States v. Guzman Soto, No. 1:18-cr-10086-IT, 2020 WL 1905323 (D. Mass. Apr. 17, 2020); United States v. Russo, No. 16-cr-441, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); United States v. Smith, No. 12 Cr. 133, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); United States v. Wen, No. 6:17-CR-06173, 2020 WL 1845104, at *4-7 (W.D.N.Y. Apr. 13,

2020); United States v. Haney, No. 19-cr-541, 2020 WL 1821988, at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Sawicz, No. 08-cr-287, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020); United States v. McCarthy, No. 3:17-CR-0230, 2020 WL 1698732 (D. Conn. Apr. 8, 2020); United States v. Colvin, No. 3:19cr179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); United States v. Perez, No. 17 Cr. 513-3, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020).  Other judges have held that the thirty-day requirement is mandatory, not subject to any exception.  See, e.g., United States v. Cox, No. 4:18-cr-00017, 2020 WL 1923220, at *1 (S.D. Ind. Apr. 21, 2020); United States v. Demaria, No. 17 Cr. 569,  2020 WL 1888910 (S.D.N.Y. Apr. 16, 2020); United States v. Rensing, No. 16 CR 442, 2020 WL 1847782, at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Roberts, No. 18-CR-528-5, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); United States v. Woodson, No. 18-cr-845, 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020).

Equitable exceptions to statutory rules have been recognized in the past.  See Holland v. Florida, 560 U.S. 631, 645-46 (2010) (noting that "a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in favor of equitable

tolling"); Hamer v. Neighborhood Hous. Servs. of Chicago, 138 S. Ct. 13, 18 n.3 (2017) (reserving on the issue of "whether mandatory claim-processing rules may be subject to equitable exceptions" other than waiver and forfeiture). Other circuit courts have recognized equitable exceptions since the Supreme Court's decision in Ross v. Blake, 136 S. Ct. 1850 (2016). See Grewal v. Cuneo Gilbert & LaDuca LLP, No. 19-448, 2020 WL 897410, at *1 (2d Cir. Feb. 25, 2020) ("We have held that Rule 4(a)'s 28-day deadline is not jurisdictional, but is a 'claim-processing rule' and, as such, its enforcement is subject to waiver, forfeiture, and other equitable exceptions."); Fed. Ins. Co. v. United States, 882 F.3d 348, 361 (2d Cir. 2018) ("Claim-processing rules, much like statutes of limitations, . . . may be subject to equitable tolling doctrines."). In Scparta, the Government recognized that the exhaustion requirement is subject to a waiver exception but took the position that only the Government, not the court, can waive exhaustion. 2020 WL 1910481, at *5.

The Government urges the Court to consider the plain language of the statute to establish that the exhaustion remedy is mandatory. The Government relies on Ross to argue that the Court

does not have discretion to create an exception to the exhaustion requirement. In Ross, the Supreme Court considered the exhaustion requirements of the Prison Litigation Reform Act (PLRA), which stated that "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 136 S. Ct. at 1856. The Supreme Court held that the exhaustion of administrative remedies was mandatory because the statutory language "suggest[ed] no limits on an inmate's obligation to exhaust." Id. As in Ross, the exhaustion requirement at issue here is imposed by statute, not case law, so the Court has less authority to recognize exceptions. Id. at 1857 ("[J]udge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to.") (citation omitted).

The statutory text of § 3582(c)(1)(A) and the congressional intent for implementing amendments to that section substantially differ from the PLRA. With respect to the PLRA, Congress amended 42 U.S.C. § 1997e(a) to make "exhaustion provisions mandatory."

Historical and Statutory Notes, 42 U.S.C.A. § 1997e (West Supp. 1997). Quite the opposite is true for § 3582(c)(1)(A), as the First Step Act extended to inmates the ability to file motions for compassionate release.

In addition, as recognized in Haney, § 3582(c)(1)(A) is not "an exhaustion requirement in the traditional sense." 2020 WL 1821988, at *3. Section 3582(c)(1)(A) does not require a defendant to fully exhaust BOP procedures before coming to court. The PLRA, on the other hand, does require an inmate to completely exhaust available administrative remedies. See Guzman Soto, 2020 WL 1905323, at *5 ("This alternative to exhaustion suggests that Congress understood that some requests for relief may be too urgent to wait for the BOP's process."); Haney, 2020 WL 1821988, at *3 ("But the hybrid requirement in this statute – either exhaust or wait 30 days – substantially reduces the importance of the first purpose, as it allows a defendant to come to court before the agency has rendered a final decision."). This Court agrees with the reasoning expressed in Guzman Soto, which provided:

> While a court may certainly decline to consider a motion where Defendant has not waited thirty days, nothing in the statutory scheme suggests that Congress intended to

> preclude the court from exercising judicial discretion and to take into account timeliness and exigent circumstances related to why the defendant seeks compassionate release.

Guzman Soto, 2020 WL 1905323, at *5.

Mandating the exhaustion requirement in this case and other cases around the country during the COVID-19 pandemic cannot be what Congress intended. Based on the House Report for the First Step Act, the statute is designed to "enhance public safety" and "make . . . changes to Bureau of Prisons' policies and procedures to ensure prisoner and guard safety and security." H.R. Rep. 115-699 at 22; see also Scparta, 2020 WL 1910481, at *7. Denying Defendant's motion without reaching the merits, only to order Defendant to wait to refile his request with this Court, would certainly frustrate these purposes. In that time, Defendant is at a high risk of contracting a potentially deadly illness based on the realities of BOP facilities, causing irreparable harm and rendering his request for compassionate release futile.

The Court concludes that § 3582(c)(1)(A) does not require the Court to wait to consider a compassionate release request if there is a credible claim of serious and imminent harm from this pandemic. That does not mean the Court will waive the thirty-day period in all

cases. The decision must be made on a case-by-case basis. In this case, the Court finds that the thirty-day requirement should be waived. The Court excuses Defendant's failure to wait thirty days from the receipt of his request by the warden of his facility to seek relief pursuant to 18 U.S.C. § 3582(c)(1)(A).

**C.     Eligibility for Compassionate Release**

As Defendant's motion is properly before the Court, the next issue is whether Defendant is eligible for compassionate release. For Defendant to be eligible for compassionate release, the Court, after considering the relevant factors set forth at 18 U.S.C. § 3553(a), must determine that "extraordinary and compelling reasons" warrant a reduction in Defendant's term of imprisonment and that the reduction is "consistent with applicable policy statements issues by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

   1.     <u>Extraordinary and Compelling Reasons for Release</u>

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments

have advised individuals to practice good hygiene and social distancing and isolation. Socially distancing can be difficult for individuals living or working in a prison.

Defendant is a thirty-one-year-old African American man who is five feet eight inches tall and (at the time of the preparation of the PSR) weighed 420 pounds, which is considered to be severely obese. Besides obesity, Defendant suffers from hypertension and diabetes, both of which he manages with medication. Any one of these three factors alone would increase the serious risks of COVID-19 for Defendant. The combination of all three undoubtedly does. The CDC has identified severe obesity, hypertension, and diabetes as comorbidities that increase the likelihood of serious risk from COVID-19. See Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed April 30, 2020) ("Patients in China with no reported underlying medical conditions had an overall case fatality of 0.9%, but case fatality was higher for patients with comorbidities: 10.5% for those with cardiovascular disease, 7.3% for diabetes, and

approximately 6% each for chronic respiratory disease, hypertension, and cancer.  Heart disease, hypertension, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased illness severity and adverse outcomes.");  Scparta, 2020 WL 1910481, *9.

The Court begins with the factors set out in 18 U.S.C. § 3553(a).  Defendant is currently serving an eighty-month term of imprisonment for distributing 3.68 grams of cocaine base.

Defendant has been incarcerated since his arrest for this offense on August 24, 2015.  According to BOP records, Defendant is scheduled to be released in fewer than four months.  Since being incarcerated, Defendant represents in his pro se motion (d/e 2) that he has completed the Residential Drug Abuse Program, as well as multiple courses, including several which concern reintegration after release from imprisonment.  Defendant sets forth a reentry plan which includes securing housing, finding employment, and pursuing vocational training.  The Court has considered the factors in § 3553(a) and concludes that they entitle Defendant to compassionate release.

2. <u>Sentencing Commission Policy Statements</u>

The relevant policy statement, § 1B1.13 of the Sentencing Guidelines, explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that "(1)(A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13 (2018).

The commentary to § 1B1.13 provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a sentence reduction.[1] U.S.S.G. § 1B1.13 cmt. n.1. One of the circumstances is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment

---

[1] The Court notes that § 1B1.13 of the Sentencing Guidelines has not been amended to reflect all of the additional language added to 18 U.S.C. § 3582(c)(1)(A). As it stands, § 1B1.13 only refers to a reduction "upon the motion of the Director of the Bureau of Prisoners," which is not the situation here. No sentencing policy provides guidance for when a defendant files a motion. Nevertheless, the Court still considers § 1B1.13.

of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Another circumstance is where "an extraordinary and compelling reason other than, or in combination with," the listed circumstances is present. U.S.S.G. § 1B1.13 cmt. n.1(D). As discussed above, in this case, Defendant has serious underlying physical and medical conditions which are present in combination with the extraordinary and compelling reason presented by the COVID-19 pandemic.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community. See U.S.S.G. § 1B1.13. The Court recognizes that Defendant is likely to be detained by the U.S. Marshals even if granted release in this case. Nonetheless, if released, if Defendant quarantines himself at his mother's residence and practices social distancing, it will diminish the risk of spreading the virus. Otherwise, the Court does not find that Defendant, who is serving a sentence for distributing a small quantity of cocaine base as a low-level drug dealer, and whose criminal convictions are solely related to controlled substances, poses a danger to the community.

Therefore, the Court finds that Defendant has satisfied all

requirements for compassionate release.

### III. CONCLUSION

For the reasons set forth above, Defendant Chuckie Lacy's Amended Motion for Compassionate Release (d/e 33) is GRANTED. The Court hereby reduces Defendant's term of imprisonment in this case from 80 months to time served. All other aspects of Defendant's sentence remain the same. Defendant's pro se Motion for Compassionate Release (d/e 31) is DENIED as MOOT.

ENTER: May 1, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE